# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY BONAPARTE,<br><br>Petitioner,<br><br>v.<br><br>PAUL COPENHAVER, Warden,<br><br>Respondent. | Case No.  1:14-cv-00850-LJO-GSA-HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Respondent is represented in this action by Mia Giacomazzi, Esq., of the United States Attorney's Office.

## I.

## BACKGROUND

Petitioner is in the custody of the Federal Bureau of Prisons (BOP) at United States Penitentiary-Atwater in Atwater, California, pursuant to a judgment of the Middle District of Florida for Distribution of Cocaine Base.  On August 2, 2013, Petitioner received an incident report for assaulting without serious injury (attempted), in violation of Prohibited Act Code 224(a).  On September 11, 2013, E. Carrero, the Disciplinary Hearing Officer (DHO), conducted a hearing on Petitioner's disciplinary charge, but suspended the hearing to determine whether an investigation report existed that Petitioner did not receive.  On September 13, 2013, the DHO

continued the hearing and informed Petitioner that no other investigative report was located. After the DHO took testimony from some of Petitioner's witnesses, the staff representative had to leave, so the hearing was continued. On September 28, 2013, the DHO continued the hearing and found Petitioner guilty of assaulting without serious injury (attempted), in violation of Prohibited Act Code 224(A). Petitioner was sanctioned with 27 days loss of good conduct time, 30 day disciplinary segregation, 180 days loss of commissary privileges, 180 days loss of TRULINCS privileges, 60 days loss of mp3 player privileges, 180 days loss of phone privileges, and 180 days loss of visiting privileges. Petitioner was provided a copy of the DHO report on October 26, 2013.

On November 13, 2013, Petitioner appealed to the Southeast Region. The Southeast Region sent Petitioner a rejection notice that advised him that he failed to provide a copy of the DHO report and failed to identify the charges and date of the DHO action he sought to appeal. On November 18, 2013, Petitioner sent in another appeal which included the DHO report. On November 26, 2013, this appeal was rejected because the hand-written submission was not legible and Petitioner was given 10 days to resubmit a legible copy of the appeal. On January 13, 2014, the BOP received Petitioner's resubmission and it was rejected as untimely. Petitioner then appealed directly to the Office of General Counsel, the final level of agency review, but the appeal was rejected and Petitioner was advised that he must resubmit his appeal to the region first. On April 8, 2014, Petitioner submitted another appeal to the Southeast Region, but it was rejected as untimely between November 26, 2013, and January 13, 2014.

Petitioner alleges in the instant petition that he was not afforded an impartial hearing officer, he was denied adequate access to exculpatory video evidence, and that the false incident report was written in retaliation.

## II.

## DISCUSSION

### A. Exhaustion of Administrative Remedies

Prior to filing a petition for writ of habeas corpus, a federal prisoner challenging any circumstance of imprisonment must first exhaust all administrative remedies. Martinez v.

Roberts, 804 F.2d 570, 571 (9th Cir. 1986); Chua Han Mow v. United States, 730 F.2d 1308, 1313 (9th Cir. 1984); Ruviwat v. Smith, 701 F.2d 844, 845 (9th Cir. 1983).  The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement.  Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990).  Thus, "because exhaustion is not required by statute, it is not jurisdictional."  Id.  If Petitioner has not properly exhausted his claims, the district court, in its discretion, may either "excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding in court."  Id.

The BOP has established an administrative remedy procedure governing prisoner complaints.  With regard to disciplinary matters, in order to exhaust administrative remedies, an inmate must raise his or her complaint first to the Regional Director.  28 C.F.R. §§ 542, et seq.  If relief is denied, an inmate may appeal to the National Inmate Appeals Administrator in the Central Office of the BOP.  Id.  No administrative remedy appeal is considered to have been finally exhausted until it is reviewed by the BOP's Central Office.

Respondent argues that Petitioner's claims are procedurally defaulted, because Petitioner did not exhaust his administrative remedies.  See Answer, Attachment 1, Declaration of Glenda Dykes, Exhibit C, Administrative Remedy Generalized Retrieval.  Respondent alleges that Petitioner has not properly presented his claim to the Regional Director or the Office of General Counsel.  Petitioner argues that waiver of the administrative exhaustion requirement is appropriate in this case because he made substantial efforts to exhaust his administrative remedies and the untimely return of his illegible form barred him from exhausting his administrative remedies.

Petitioner may not have had an adequate opportunity to present his claims to the Regional Director, because he did not receive the second rejection notice regarding the illegibility of his second submission until the deadline for resubmission had already passed.  Petitioner was unable to comply with the 10 day deadline because of circumstances that were beyond his control.  Petitioner did attempt to resubmit his appeal after the 10 day deadline had expired.  The Southeast Region received Petitioner's resubmission on January 13, 2014.  Petitioner's

1   resubmission was rejected as untimely by the Southeast Region.  Petitioner then appealed to the

2   Office of General Counsel, but that appeal was denied.  The Office of General Counsel advised

3   Petitioner that he had to resubmit the appeal to the region first.  Petitioner then attempted to

4   again resubmit his appeal to the Southeast Region, but it was once again denied as untimely for

5   the time period between November 26, 2013, and January 13, 2014.

6        The Court finds that after Petitioner's administrative appeal was returned to him from the

7   Southeast Region for being illegible, Petitioner acted diligently in attempting to resubmit his

8   appeal to the Southeast Region.   It appears that Petitioner was unable to exhaust his

9   administrative remedies because of circumstances beyond his control.  Therefore, the Court finds

10  that, under these circumstances, it is appropriate to excuse the administrative exhaustion

11  requirement in the present case.  Thus, the Court will address Petitioner's claims on the merits.

12      **B.  Merits**

13          1.   Procedural Due Process Protections

14       Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be

15  diminished by the needs and objectives of the institutional environment.   See Wolff v.

16  McDonnell, 418 U.S. 539, 555 (1974).  Prison disciplinary proceedings are not part of a criminal

17  prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings.  Id. at

18  556.  Thus, a prisoner's due process rights are moderated by the "legitimate institutional needs"

19  of a prison.  Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989) (citing Superintendent, etc.

20  v. Hill, 472 U.S. 445, 454-455 (1984)).

21       However, when a prison disciplinary proceeding may result in the loss of good time

22  credits, due process requires that the prisoner receive: (1) advance written notice of at least 24

23  hours of the disciplinary charges; (2) an opportunity, when consistent with institutional safety

24  and correctional goals, to call witnesses and present documentary evidence in his defense; and

25  (3) a written statement by the factfinder of the evidence relied on and the reasons for the

26  disciplinary action.  See Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567.

27       In this case, Petitioner was given advance written notice of the charged misconduct on

28  August 1, 2013 and August 2, 2013, by receiving written copies of the incident reports detailing

1   the allegations.  Therefore, Petitioner received advanced written notice well in advance of the

2   first attempted hearing in this matter on September 11, 2013.  See Answer, Attachment 2,

3   Declaration of E. Carrero, Exhibit 9, Discipline Hearing Officer Report.  In any event, Petitioner

4   does not contend that he was not given proper notice.

5         In Wolff, the Court held that with certain exceptions, in prison disciplinary proceedings, a

6   prisoner is entitled to the right to go call witnesses and present documentary evidence.  See

7   Wolff, 418 at 556.  However, it is clear that prisoners are not entitled to the same evidentiary

8   standards in prison disciplinary proceedings as those guaranteed to a defendant in a criminal

9   proceeding.  Id.

10        Contrary to Petitioner's claim, he was not denied the right to present evidence.  Petitioner

11  claims that prison officials refused to give him videotape evidence that would have supported his

12  version of the incident.  However, after attempting to review video footage involving this

13  incident, the investigating lieutenant, J. Kackenmeister, found that there "were no cameras facing

14  the direction of I/M Bonaparte."  See Answer, Attachment 2, Declaration of E. Carrero, Exhibit

15  8, Memorandum dated 9/20/2013 to E. Carrero from J. Kackenmeister.  As no video evidence

16  existed, the BOP justified to the DHO why it was unable to give any video evidence to

17  Petitioner.  Thus, Petitioner received all of the due process guarantees entitled to him with regard

18  to the presentation of evidence.

19        Under Wolff, a prisoner is entitled to an impartial hearing body to conduct the

20  disciplinary proceedings.  See Wolff, 418 U.S. at 559-560.  BOP regulations require that the

21  DHOs who preside over disciplinary proceedings not be a "reporting officer, investigating

22  officer, or Unit Discipline Committee (UDC) member, or a witness to the incident, or play any

23  significant part in having the charge(s) referred to the DHO."  28 C.F.R. § 541.16(b).

24  Petitioner's hearing was conducted by DHO Carrero, who was not involved in the incident or

25  investigation of the incident, and was not a member of the UDC.  See Answer, Attachment 2,

26  Declaration of E. Carrero at 2.  Petitioner claims that DHO Carrero was biased against him

27  because Petitioner has filed civil lawsuits against the prison and officers at the prison.  However,

28  there is no evidence that Petitioner has filed a civil lawsuit against DHO Carrero.  Furthermore,

there is no evidence that DHO Carrero was unable to impartially preside over Petitioner's disciplinary proceeding because of Petitioner's civil lawsuits against other personnel at the prison. Therefore, Petitioner's hearing was conducted in accordance with procedural due process.

Petitioner also tries to argue that he was denied due process because the investigating officer was involved in reporting the incident, but it is clear that the original report and the rewritten report were by Alvarez. Lieutenant Kackenmeister reviewed the original incident report and had Alvarez rewrite the incident report. However, Lieutenant Kackenmeister did not report the incident and he was not involved in the incident.

At the conclusion of the disciplinary hearing, the DHO found that Petitioner committed the misconduct outlined in the incident report, namely, attempted assaulting without serious injury, in violation of prohibited act code 224A. On October 26, 2013, Petitioner was provided with a copy of the written decision outlining the evidence relied upon and the reasons for the decision. Thus, it is apparent that Petitioner received all of the procedural due process protections set forth in Wolff, and there was no due process violation.

2. Substantive Due Process

Prisoners possess a liberty interest in their statutorily provided good time credits. Wolff, 418 U.S. at 557. Therefore, a prisoner may not be deprived of the credits without due process of law. Due process requires that the decision be supported by "some evidence." Hill, 472 U.S. at 455, citing United States ex rel. Vatauer v. Commissioner of Immigration, 273 U.S. 103, 106 (1927). The decision to revoke a prisoner's good time credits need only be supported by "some evidence," even if that evidence might be characterized as meager. See Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighting of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455-456. "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some

1  basis in fact." Id. at 456.  A due process violation can be shown if after a review of the record in

2  the light most favorable to upholding the agency's decision is devoid of evidence to support the

3  decision to revoke the good time credits.  Id. at 457.

4         In this case, there is some evidence to support the DHO's finding of guilt.  The DHO

5  considered the incident report written by staff member Alvarez, staff memoranda, and the

6  testimony of witnesses Ronald Samuels and Christopher Hemmings.  The regulatory language

7  describing a Code 224 violation explains that "a charge at this level is used when less serious

8  physical injury or contact has been attempted or accomplished by an inmate." See 28 C.F.R. §

9  541.3, Table 1.  In the incident report, Alvarez detailed the specific incident and quoted

10 Petitioner's exact language.  Alvarez stated that Petitioner got within inches of him and said,

11 "What you didn't see me at the door? You weren't going to door?"  Alvarez wrote in his incident

12 report that he felt threatened by Petitioner's demeanor and body stance and felt that Petitioner

13 was challenging him.

14        Petitioner contends that he is actually innocent of the infraction because the incident

15 report is retaliation for his civil complaints against prison officers.  Petitioner fails to set forth

16 any evidence, beyond his mere assertion, that he is actually innocent of the offense.  Petitioner's

17 two witnesses did not provide a defense for him.  Inmate Samuels testified that Petitioner and

18 Alvarez were face to face with one another during the incident.  Inmate Hemmings only testified

19 that Petitioner had requested the videotape of the area.  Petitioner's aggressive move toward

20 Alvarez is "some evidence" that Petitioner attempted less serious physical contact.  The DHO

21 properly considered the evidence and the weight to give Petitioner's statement and Alvarez's

22 statement.   Disciplinary decisions do not require that the supporting evidence outweigh the

23 evidence to the contrary.  Hill, 472 U.S. at 455.  Due process only requires that there be "some

24 evidence."  Id.  Therefore, there is "some evidence" supporting the disciplinary decision.

25        Petitioner contends he has been subjected to acts of retaliation by certain BOP staff

26 members, which appears to be a challenge to the conditions of his confinement.  Because this

27 claim involves the conditions of Petitioner's confinement, he cannot proceed by way of a petition

28 for writ of habeas corpus and must pursue his claims in a Bivens action.   In Bivens v. Six

Unknown Named Agents of Federal Bureau of Narcotics, 408 U.S. 388 (1971), the United States Supreme Court established a federal counterpart to a 42 U.S.C. § 1983 action and established a right to sue a federal employee for a civil rights action.  Therefore, the Court must dismiss Petitioner's challenge to the conditions of his confinement without prejudice to allow Petitioner to re-file pursuant to Bivens.

## III.

## FINDINGS AND RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED and that Petitioner's retaliation claim be DISMISSED without prejudice.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __March 3, 2015__          _____ **/s/ Gary S. Austin**
                                    UNITED STATES MAGISTRATE JUDGE